UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION September 28, 2007

IN RE: WILLIAM E. GLASPIE.

                                            Case No: 06-14871
                                            Honorable Victoria A. Roberts

_____/

## ORDER AFFIRMING IN PART AND REVERSING IN PART THE ORDER OF THE BANKRUPTCY COURT AND DENYING MOTION FOR CONTEMPT

### I. INTRODUCTION

William E. Glaspie ("Appellant") filed a Motion for Contempt in the Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court") against General Motors ("Respondent"), alleging violation of the automatic stay provision of 11 U.S.C.S. § 362(a) and the injunction provision of 11 U.S.C.S. § 524(a). His motion was denied. This appeal followed. For the following reasons, the Court affirms in part and reverses in part the Order of the Bankruptcy Court, and **DENIES** the Motion for Contempt.

### II. BACKGROUND

Appellant is a former employee of Respondent. After an accident suffered on September 25, 2001 while working for Respondent, Appellant received $550 per week in Sickness & Accident payments from Respondent under its Life and Disability Benefits Program ("L&DBP"). Beginning September 25, 2002, the L&DBP payments continued at $2180 a month through the long term Extended Disability Benefits provision of the L&DBP. These payments ceased on April 1, 2003 because Appellant became eligible for Respondent's "disability retirement benefits" program under Respondent's Hourly-

1

Rate Employees Pension Plan, and because of a retroactive award of Social Security Disability Benefits covering a period beginning April 1, 2002.

On March 14, 2003, Respondent sent a letter to Appellant informing him that pursuant to Respondent's employment contract, his receipt of Social Security Disability payments made his previously received benefits under Respondent's L&DBP (covering the same time period) immediately due overpayments. This amount totaled $14,991.89. On April 18, 2003, Appellant filed his Petition in Bankruptcy, and on August 18, 2003, the Order Discharging Debtor was entered.

On May 12, 2003 -- between the filing of the petition and the discharge of his bankruptcy -- Appellant was awarded workers' compensation benefits for the period from September 19, 2001, through April 20, 2003, and thereafter. The Workers' Compensation Agency/Board of Magistrates ("Workers' Compensation Board") award entitled Respondent to reduce the lump sum due Appellant by the amount that it had previously paid under the L&DBP. *See* MCL § 418.354(1)(b); Opinion/Order, Workers' Compensation Agency/Board of Magistrates, Respondent Exhibit B. Although granting Respondent this right to coordinate benefits, the Workers' Compensation Board noted in its Opinion that it appeared the Michigan coordination law conflicted with federal bankruptcy law because it constituted a prohibited "setoff." Appellant appealed this decision to the State of Michigan Workers' Compensation Appellate Commission ("Appellate Commission"). On March 20, 2006 the Appellate Commission affirmed the Workers' Compensation Board decision, but found there to be no conflict with federal bankruptcy law.

On October 19, 2006, the Bankruptcy Court found the coordination law did not violate 11 U.S.C.S. § 362(a), 524(a). It also held that Respondent was entitled to coordinate its payments under Michigan law. Based on these findings, the Bankruptcy Court denied the Motion for Contempt against Respondent. After the decision by the Bankruptcy Court, namely on October 27, 2006, the Michigan Court of Appeals affirmed

2

the ruling of the Appellate Commission "on the merits," in a one sentence opinion. The same day, Appellant filed a timely notice of appeal of the Bankruptcy Court decision. This Court now reviews the Bankruptcy Court decision pursuant to 28 U.S.C.S. § 158(a).

Appellant alleges that the reduction by Respondent of his workers' compensation award pursuant to MCL § 418.354, may be legal in the general context, but violates the automatic stay and injunction imposed by bankruptcy courts after the filing of a bankruptcy petition. *See* 11 U.S.C.S. § 362(a)-(a)(1) ("a petition…operates as a stay, applicable to all entities [regarding] the commencement or continuation [of an] action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.");11 U.S.C.S. § 524 ("A discharge in a case under this title…operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

The issues before the Court are: (1) whether the decision of the Michigan Court of Appeals resulted in *res judicata* or *collateral estoppel*; (2) whether this Court has no jurisdiction to consider this matter because the decision of the Michigan Court of Appeals resulted in the loss of jurisdiction pursuant to the *Rooker-Feldman* doctrine; and (3) whether the coordination provision of MCL § 418.354 violates 11 U.S.C.S. § 362(a), 524(a) when it is applied to the workers' compensation benefits of an individual who filed a bankruptcy petition.

## III. BANKRUPTCY COURT OPINION

The Bankruptcy Court decided: (1) it did not lack jurisdiction pursuant to the *Rooker-Feldman* doctrine; (2) *res judicata* and *collateral estoppel* did not apply; and (3) the application of MCL § 418.354 to Appellant's workers' compensation award was not in conflict with the automatic stay and injunction protections of 11 U.S.C.S. § 362(a), 524(a).

The Court affirms the reasoning and outcome regarding issues (1) and (2), and the outcome of issue (3). Although the outcome of issue (3) is correct, the reasoning requires clarification. It is not clear whether the Bankruptcy Court based its decision on a finding that the countervailing claims arose from the same "transaction," and were therefore a permissible "recoupment," or whether, as is urged by Respondent, the court found that the workers' compensation award is neither a "recoupment" nor a "setoff," but merely an award that factors in, or "coordinates," the receipt of earlier and alternate benefits into the workers' compensation award.

Respondent continues to challenge the jurisdiction of the Court because of the Michigan Court of Appeals decision issued subsequent to the Bankruptcy Court decision. The Court addresses those challenges first.

## IV. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's findings of law *de novo* and findings of fact for clear error. *See Barnsville v. Rafoth*, 106 F.3d 1255, 1259 (6th Cir. 1997), *cert denied*, 522 U.S. 816 (1997).

**V. ANALYSIS**

A) <u>Jurisdiction and Preclusion Challenges</u>

Jurisdiction to hear this appeal is established by 28 U.S.C.S. § 158(a). Respondent's preclusion and jurisdiction arguments fail because of one glaring shortcoming: the Michigan Court of Appeals decision came after the decision of the Bankruptcy Court.

    i) <u>Rooker- Feldman</u>

The *Rooker-Feldman* doctrine arises from two Supreme Court cases which jointly prohibit federal district courts from reviewing the merits of state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). As summarized by Respondent, the *Rooker-Feldman* doctrine:

> [I]s a combination of abstention and *res judicata* doctrines, and stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court….[T]he lower federal courts do not have the authority to review state court decisions, even where a federal question is presented. [The doctrine], in essence bars 'a party losing in state court…from seeking what…would be appellate review of the state judgment in a United States district court."

Respondent's Response at 13 (*citing District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1923); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995), *cert dismissed*, 516 U.S. 983; *Johnson v. De Grandy*, 512 U.S. 997 (1994)) (internal citations omitted).

The Bankruptcy Court rejected application of the *Rooker-Feldman* doctrine, holding that it "has no application to judicial review of executive action, including determinations made by a state administrative agency." Bank. Opin. at 3, Resp. Exh. F (citing *Verizon Md., Inc. v. Public Service Com'n of Md.*, 535 U.S. 635, 644 n.3 (2002)).

5

When the Bankruptcy Court issued its opinion, only state administrative tribunals had made a determination.  Subsequently, the Michigan Court of Appeals affirmed these determinations on the merits.

At the core of this analysis is the unique nature of Bankruptcy Courts, and whether their orders, appealable to district courts, are final.  If they are not, then the Michigan Court of Appeals decision rendered several days after the Bankruptcy Court decision, may mean that this case was "already litigated in state court,"  depriving this Court of jurisdiction to render a decision on the coordination of benefits.

Bankruptcy Courts are not Article III courts.  These courts have been permitted by Congress to have the power to hear and make final decisions on all "core" proceedings arising under the bankruptcy code. *See* 28 U.S.C.S. § 157(b)(1).  In contrast, these courts may hear "non-core" proceedings, but may not make final judgments without the consent of both parties, and are otherwise limited to making recommendations to the district court. *See id* § 157(c)(1).  If the Bankruptcy Court decision was a core proceeding, and therefore a final decision, it was rendered before the Michigan Court of Appeals decision and Rooker-*Feldman would not* operate to deny this court jurisdiction.

Although core proceedings are not specifically defined in 28 U.S.C.S. § 157, the section contains a non-exhaustive list of proceedings that are core proceedings. *See* U.S.C.S. § 157(b)(2).   A denial of sanctions is not listed.  Despite this omission, there is substantial support for the view that a determination of a motion for contempt is a core issue of bankruptcy law.  The Eleventh Circuit has specifically held that the denial of a motion for contempt is a final order. *See Anastasia Cruises, Inc. v. Exxon Mobil Corp. (In re Commodore Holdings, Inc.)*, 331 F.3d 1257, 3 (11th Cir. 2003) ("The order in this case denied [the] motion for contempt. This ended the particular controversy regarding violation of the automatic stay…"); *see also* 10 Collier on Bankruptcy ¶ 9020.04 (15th Ed. Rev. 2007) ("Contempt orders, like other orders resulting from contested matters,

are final orders subject to appeal."); *Lindsey v. O'Brien, Tanski, & Young Health Care Providers (In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) ("finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'"). In addition, the bankruptcy decision was also necessarily final, as only final decisions of Bankruptcy Courts are subject to appeal to the district courts. 28 U.S.C.S. § 158 ("The district courts of the United States shall have jurisdiction to hear appeals…from final judgments, orders, and decrees").

Notably, Respondent does not contest the finality of the order denying the Motion for Contempt. This Court holds that the Bankruptcy Court's denial of the motion for contempt was a final order on a core proceeding subject only to appeal and modification by the district court. Accordingly, *Rooker-Feldman* does not apply.

In addition, the Court notes the recent decision of the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005). Even if the Bankruptcy Court decision had not preceded the Michigan Court of Appeals decision, or even if *arguendo,* it was not a final decision, the *Rooker-Feldman* doctrine would not automatically strip this Court of jurisdiction. *Exxon* made clear that while "comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation," "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. Indeed, the *Rooker-Feldman* doctrine does not support the notion that concurrent jurisdiction "vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in federal court." *Id.*

*Rooker-Feldman* is most appropriately applied in cases in which a dissatisfied litigant *files* a federal suit *after* a state court decision. *See id.* at 291 ("In both [*Rooker* and *Feldman*] the losing party in state court filed suit in federal court *after* the state proceedings ended.") (emphasis added). Here, the Bankruptcy Court action was filed

7

long before the Michigan Court of Appeals decision. *Exxon* teaches that this situation is more appropriately analyzed as a question of preclusion and not under the *Rooker-Feldman* doctrine. *See id.* at 293 ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").

ii) Res Judicata and Collateral Estoppel

The Bankruptcy Court held that it would apply *collateral estoppel* to the factual findings of the administrative board, but not to its legal conclusions. *See* Bankruptcy Opinion at 3, Resp. Exh. F (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966))); *see also Noyes v. Channel Prods., Inc.*, 935 F.2d 806, 809 (6th Cir. 1991). This holding was correct. Respondent now argues that because of the subsequent Michigan Court of Appeals decision, this Court must grant that decision *res judicata* and/or *collateral estoppel* effect as to questions of law. Appellant does not address this issue. Because the Bankruptcy Court decision preceded the Michigan Court of Appeals decision, neither *res judicata* nor *collateral estoppel* bound the Bankruptcy Court, nor do they bind this Court in its review of the Bankruptcy Court decision.

Indeed, to the extent that *res judicata* or *collateral estoppel* apply at all, the Bankruptcy Court decision resulted in the application of *collateral estoppel against the Michigan Court of Appeals*. Application of *collateral estoppel* has four requirements: (1) the issue precluded must be the same one involved in the prior proceeding; (2) the issue must actually have been litigated in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and (4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. *See Cent. Transp. Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256 (6th Cir. 1991) (citing *N.L.R.B. v. Master Slack and/or Master Trousers Corp.,* 773 F.2d 77, 81) (6th Cir. 1985). Although

8

Respondent attempted to apply the doctrine to this Court, in fact, all the requirements for the application of *collateral estoppel against the Michigan Court of Appeals are present*.

Whether coordination under MCL § 418.354 was prohibited by 11 U.S.C.S. § 362(a), 524(a) was decided first in the Bankruptcy Court, and was fully litigated there. The compatibility of 11 U.S.C.S. § 362(a), 524(a) and MCL § 418.354 was the primary contested issue before the Bankruptcy Court. Lastly, Respondent had a full and fair opportunity to litigate the issue in the Bankruptcy Court. Having met the requirements of *Central Transport*, the final determination of the bankruptcy court (and more importantly the reasoning behind its conclusion) that coordination under MCL § 418.354 did not violate the automatic stay or injunction under 11 U.S.C.S. § 362(a), 524(a), was binding on the Michigan Court of Appeals.

B) <u>Compatibility of MCL §  418.354 and 11 U.S.C.S. § 362(a), 524(a)</u>

Ironically, every tribunal (except the Workers' Compensation Board) that addressed the issue agrees that MCL § 418.354 does not violate 11 U.S.C.S. § 362(a), 524(a). The Workers' Compensation Board held it was bound by Michigan law and applied MCL § 418.354. The Appellate Division held that the use of the word "received" instead of "owed" or "claimed" brought MCL § 418.354 outside the scope of 11 U.S.C.S. § 362(a), 524(a). The Bankruptcy Court below mixed the reasoning of the Appellate Division and the application of the traditional "same transaction" test to hold 11 U.S.C.S. § 362(a), 524(a) were not violated. The Michigan Court of Appeals subsequently affirmed the holding and reasoning of the Appellate Division. The only question for this Court is the correct reasoning behind a result that has been unanimously upheld by each of the tribunals to address the issue.

In its response, Respondent argues that the Bankruptcy Court erred in describing the reduction in benefits as "coordination/recoupement," and should have instead referred to the reduction as only a "coordination." *See* Respondent Response at 7 n.3. The Court finds that the Respondent's critique of the bankruptcy decision holds merit. The Bankruptcy Court conflated application of the theory of "recoupement" with the theory of "coordination" used by the Appellate Division. Understanding this conflation requires close examination of the Bankruptcy Court opinion. The pertinent part reads:

> In the present case, General Motors's right to reduce the worker's compensation award by benefits already received was not affected by Glaspie's discharge. The initial overpayment of benefits created a debt that General Motors had an independent right to seek repayment on, that debt was discharged through the bankruptcy. However, *the right of recoupement* that arose under M.C.L § 418.354 did not give rise to an independent right to payment. It could only be recouped from a future award. Accordingly, it was not a debt subject to discharge. The workers' compensation award specifically provided for coordination/*recoupement* of previously paid benefits. The parties do not dispute that Glaspie received the Sickness and Accident Benefits and Extended Disability Benefits. Therefore, General Motors had a right to deduct those payments prior to paying workers' compensation.

Bankruptcy Court Opinion at 6, Resp. Exh. F (emphasis added).

Michigan workers' compensation law allows for the "coordination" of benefits. *See* MCL § 418.354. When a worker receives workers' compensation benefits, employers are legally entitled to deduct certain amounts from the amount they would otherwise be "obligated" to pay. *Id.* In pertinent part, the provision allows the amount of workers' compensation the employer is "obligated" to pay to be reduced by previous payments under "a self-insurance plan, a wage continuation plan, or under a disability insurance policy provided by the same employer from whom" workers' compensation payments are due. MCL § 418.354(1)(b). Appellant does not take issue with the

general validity of the provision allowing coordination of benefits, but challenges its application to persons who have filed a petition for the protections of the automatic stay and injunction provisions of 11 U.S.C.S. § 362(a), 524(a)(2).

Pointedly, § 524(a)(2) and § 362(a) prohibit the "offset" of any debt subsequently owed by a pre-petition creditor to the protected petitioner based on a discharged pre-petition debt. While a setoff/offset is prohibited, case law has developed the availability of the alternate action of "recoupement." The distinction between a prohibited "setoff" and a permitted "recoupement," was addressed by the Bankruptcy Court below:

> Recoupment should be distinguished from setoff. The latter 'reduces or extinguishes a mutual debt arising from different transactions', and is subject to the automatic stay. On the other hand, recoupment "reduces or extinguishes a debt arising from the same transaction", and is not stayed by the bankruptcy.

Bank. Opin. at 5, Resp. Exh. F (citing *In re Delicruz*, 300 B.R. 669, 679 (Bankr. E.D. Mich. 2003)) (internal citations omitted).

The primary method to distinguish between prohibited and acceptable remedies based on discharged debt is to determine whether or not the two claims arise from the "same transaction." Many courts further specify that to meet the same transaction requirement, the claims must also arise from the same "contract." *See Lee v. Schweiker*, 739 F.2d 870, 874 (3d Cir. 1984); *First Nat'l Bank v. Master Auto Svc. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982); *Thompson v. Bd. of Tr. of the Fairfax County Police Officers' Ret. Sys. (In re Thompson)*, 182 B.R. 140, 145, 149 (Bankr. E.D. Va. 1995). Some courts have even gone as far as requiring an even more specific connection. *See Thompson,*

182 B.R. at 148 (citing *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065 (3d Cir. 1992)).

If the Bankruptcy Court based its decision on the categorization of the workers' compensation award as a recoupement, that reasoning is in error. Reducing post-bankruptcy petition workers' compensation claims because of overpayments of a pre-bankruptcy petition private disability plan is not a recoupement. Rather, it is a prohibited setoff. These payments do not arise from the same transaction or contract. Private disability payments arise from the employment contract between employer and employee. In contrast, workers' compensation payments arise from a legislatively determined compromise liability system for employment related injuries.

Further, this workers' compensation award is not a "transaction" as usually described in the case law addressing the distinction between recoupement and setoff. Indeed, the "coordination" of the workers' compensation award is neither a "recoupement" nor a "setoff." The award involves only a singular workers' compensation award, and does not involve or require a comparison of the pre-bankruptcy and post-bankruptcy aspects of two types of "debt[s]" or "claim[s]." 11 U.S.C.S. § 101(12), 101((5)(A). The reduction of the award is merely the result of the application of one factor in the legislatively determined method of calculating workers' compensation awards: whether the recipient previously *received* (as opposed to owed or owes) payment of certain other benefits. The Bankruptcy Court opinion should have omitted all reference to the theory of "recoupement," and used only the word "coordination."

The holding of this Court is that:

General Motors' right to reduce the workers' compensation award by benefits already received was not affected by Glaspie's discharge. They are substantively two unrelated events. The initial overpayment of benefits created a debt that General Motors had an independent right to seek repayment on, and that debt was discharged through the bankruptcy. The Michigan workers' compensation law, which determines the amount of the award, specifically provides for the reduction of the award by previous payments under a self-insurance plan. The parties do not dispute that Glaspie *received* the Sickness and Accident Benefits and Extended Disability Benefits. Therefore, General Motors had a right to coordinate, and therefore, reduce the amount of the award.

**VI. CONCLUSION**

The Court affirms in part and reverses in part the Order of the Bankruptcy Court, and **DENIES** Appellant's Motion for Contempt.

**IT IS ORDERED.**

                                                /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: September 28, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2007

   /s/ Linda Vertriest
Deputy Clerk